IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STANISLAW JAGLA,                          )
                                          )
                    Plaintiff,            )
                                          )   Civil Action No.: 05 C 6460
            v.                            )
                                          )   Suzanne B. Conlon, Judge
LaSALLE BANK,                             )
                                          )
                    Defendant.            )

## MEMORANDUM OPINION AND ORDER

Stanislaw Jagla filed a *pro se* complaint against LaSalle Bank and five of its officers, alleging

defendants failed to hire and to promote him and other putative class members on the basis of race

and national origin. His claims against the individual defendants, as well as his racial discrimination

and failure to promote claims, were dismissed. *Jagla v. LaSalle Bank*, No. 06 C 6460, 2006 WL

695251, at **2-3 (N.D. Ill. Mar. 15, 2006) (Conlon, J.). His motions for appointment of counsel and

for class certification were denied. Minute Order, Dkt. No. 24 (Feb. 21, 2006); *Jagla v. LaSalle

Bank*, No. 05 C 6460, 2006 WL 1005728, at **2-6 (N.D. Ill. Apr. 12, 2006) (Conlon, J.). He filed

an amended complaint alleging discrimination on the basis of his national origin and of his age, in

violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623 *et seq.*, and Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Am. Compl., Dkt. No. 61 (June 6, 2006).

Promptly after discovery closed on July 11, 2006, LaSalle Bank moved for summary judgment.

Jagla was allowed 40 days to respond – 20 days longer than a normal briefing schedule. Minute

Order, Dkt. No. 80 (July 13, 2006). He responded after unsuccessfully moving to compel document

production. *See* Minute Order, Dkt. No. 81 (Aug. 1, 2006). The summary judgment motion is now

fully briefed. In addition, before the court are LaSalle Bank's motion to amend its Local Rule 56.1(a)(3) statement and to strike portions of Jagla's response, as well as Jagla's motions to compel document production and to extend discovery. For the reasons set forth below, LaSalle Bank's summary judgment motion is granted, its motion to strike and to amend is granted in part and denied in part, and Jagla's motions are denied.

## BACKGROUND

### I.    LaSalle Bank's Recruiting

The following facts are undisputed unless otherwise noted. LaSalle Bank, headquartered in Chicago, maintains regional offices in other parts of Illinois, as well as in Colorado, Florida, Indiana, Iowa, Minnesota, Missouri, Ohio, and Wisconsin. Def. Facts at ¶¶ 2, 17. LaSalle Bank recruits college graduates to fill its entry level positions, such as finance associates and regional credit analysts. Zemach Decl. at ¶¶ 5-6. Brian Zemach, LaSalle Bank's College Relations Director, is in charge of recruiting, primarily through soliciting and interviewing candidates on college campuses. *Id.* at ¶¶ 4, 6. Zemach and his staff usually visit over 20 colleges across the country. Def. Facts at ¶ 62.

In addition to on-campus recruiting, LaSalle Bank invites job seekers to apply online. *Id.* at ¶ 6. On a regular basis, Zemach and his staff review the online applications in two steps. *Id.* at ¶ 9. First, they compare the applications against a set of minimum requirements to identify qualified applicants. For example, in addition to "a bachelor's degree in a business major," a qualified applicant must have "a minium of a 3.0/4.0 grade point average, at least two college-level accounting courses" for the credit analyst position, and "a minimum of a 3.5/4.0 grade point average, a degree in economics, accounting, mathematics or finance" for the finance associate position. *Id.* at ¶¶ 18,

2

20. On a case-by-case basis, these requirements can be waived for applicants who demonstrate other achievements, such as extensive leadership activities. Def. Reply Ex. B at ¶ 9 (Zemach's answers to written deposition). At the second step, Zemach and his staff analyze each qualified application for subjective suitability based on the open positions, and relative to other qualified applications. Def. Facts at ¶ 9; *see also* Zemach Decl. at ¶¶ 15-17. If an application passes the second step, Zemach and his staff interview the applicant by telephone; based on the applicant's performance on the telephone interview, they would decide whether to conduct two additional rounds of in-person interviews, which may lead to hiring the applicant. *Id.* at ¶ 22. LaSalle Bank receives a large number of online applications: over 1,500 during the 2004-05 recruiting season. *Id.* at ¶ 9. As a result, LaSalle Bank interviews only a select portion of online applicants. Def. Facts at ¶ 7.

## II.    Jagla's Online Applications

This case arises from Jagla's two online applications that failed to earn him an interview with LaSalle Bank. He submitted his resume for a regional credit analyst position on January 21, 2005, and for a finance associate position on February 18, 2005. *Id.* at ¶¶ 8, 22, 24. His resume satisfied the minimum requirements for both positions: he earned a bachelor's degree in economics and finance from Northeastern Illinois University, graduating with a perfect 4.0 grade point average. *Compare* Zemach Decl. at ¶¶ 18-19 *with* Def. Facts Ex. 5A (Jagla's resume). He also completed 70% of the course work for a master's degree in financial markets. *Id.* In addition to academic achievements, he held several customer service positions in the Chicago area since 1996, including one with LaSalle Bank. *Id.*

Aside from his post-secondary education and employment, Jagla's resume shed little light on his background. He was born in Poland, and was 42 years old in 2005. Def. Facts at ¶ 1. But

3

his resume provided no signposts of either his age or his Polish origin. *See* Def. Facts Ex. 5A (Jagla's resume). His first name on the resume was "Stan," not "Stanislaw"; he did not state that he spoke Polish or had any connection to Poland. *Id.* Nor did he include his college graduation year. *See id.* Thus, the sole indicator of his age was that he was continuously employed since 1996, and that he attended graduate school. *See id.*

In May 2005, Jagla received a postcard from LaSalle Bank rejecting his applications for the credit analyst and the finance associate positions. Am. Compl. at ¶ 22. He believed he was well qualified for both positions, and that he was rejected because of his national origin and his age. He brought a timely complaint with the Equal Employment Opportunity Commission ("the EEOC"). *Id.* at ¶ 23. After receiving an EEOC right-to-sue letter, he filed this case. *Id.*

### III. LaSalle Bank's Position

LaSalle Bank denies Jagla's applications were rejected for discriminatory reasons, maintaining its human resources staff knew nothing about his age or national origin. LaSalle Bank claims Jagla was unsuitable for the credit analyst position. Def. Facts at ¶¶ 32-35. Although Zemach had no recollection of Jagla, he was the only LaSalle Bank employee who could have reviewed Jagla's application for the credit analyst position. Def. Reply Ex. A at ¶ 5 (Zemach Supplemental Decl.). According to Zemach's experience, applicants pursuing a graduate degree in financial markets typically lacked long-term commitment to the credit analyst position, which did not involve financial markets. Zemach Decl. at ¶ 21. In addition, applicants who never lived outside the Chicago area would generally be unsuitable for the credit analyst positions, which are located at LaSalle Bank's regional offices. *Id.* Because Jagla's background fell under both undesirable categories, he was not selected for a telephone interview. *Id.* at ¶ 22.

4

Zemach attests that no LaSalle Bank employee connected to the review process knew about Jagla's age or national origin. *See id.* at ¶¶ 23-25. Nor was Jagla's file from his previous employment used during the review. *Id.* at ¶ 27. According to Zemach, Jagla's resume constituted the sole basis for the decision to reject his credit analyst application. *Id.* at ¶ 28.

Zemach further attests that Jagla's resume was never reviewed for the finance associate position. *Id.* at ¶ 13. By February 16, 2005, Zemach and his staff had already selected a final group of potential candidates. *Id.* at ¶¶ 12-13. Jagla's application, submitted on February 18, 2005, was therefore never reviewed. *Id.* at ¶ 13. Accordingly, LaSalle Bank's rejection of Jagla's two applications had nothing to do with his national origin or his age.

## IV.    Jagla's Position

Jagla asserts LaSalle Bank maintained a "[r]igged hiring system" in which underqualified candidates from certain preferred colleges are hired, and qualified candidates like himself are denied interviews. Pl. Additional Facts at ¶¶ 1-2, 6. He further asserts he was well qualified for the credit analyst and the finance associate positions, and that LaSalle Bank declined to hire him because of his national origin and his age. *See id.* at ¶ 5. Finally, he contends LaSalle Bank's explanations for rejecting his applications are a mere pretext for discrimination. *Id.* at ¶¶ 10, 14-17.

According to Jagla, LaSalle Bank only hires graduates from "preferred" colleges through on-campus interviews, and never hires online applicants or graduates from non-preferred colleges. Pl. Resp. Facts at ¶¶ 12, 56. He further attests LaSalle Bank hires graduates from the preferred colleges even if they lack qualifications. *Id.* at ¶¶ 29-30. He claims the preferred colleges have "low or nonexistent population[s]" of students who are over 40, or from a foreign country. *Id.* at ¶ 39. As a result, he claims LaSalle Bank's alleged hiring practices had a disparate impact on his applications.

Jagla dismisses LaSalle Bank's explanations for rejecting his applications as pretext. He claims to be the best qualified candidate for both positions, because he had sales experience and the highest grade point average. *Id.* at ¶¶ 16, 47. He asserts LaSalle Bank hired credit analysts who lacked commitment to working in its regional offices. *Id.* at ¶¶ 32, 35. He contends Zemach's declaration in support of the summary judgment motion lacks veracity because it contradicts the 2005 affidavit Zemach filed with the EEOC. *Id.* at ¶¶ 7, 23.

## DISCUSSION

## I. Summary Judgment Motion

### A. Summary Judgment Standard

Summary judgment is proper when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A movant has the initial burden of demonstrating that it is entitled to summary judgment. *Cont'l Cas. Co. v. Northwestern Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). Once a movant has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Cont'l Cas. Co.*, 427 F.3d at 1041. The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the nonmoving party. *Id.* A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## B.   *McDonnell Douglas* Burden-Shifting Framework

Jagla sues under both disparate treatment and disparate impact theories. Absent direct evidence of discrimination, he must proceed under the indirect method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this method, he must first establish a *prima facie* case of discrimination. *Id.* at 802. If he succeeds in establishing a *prima facie* case, the burden of production shifts to LaSalle Bank to offer a legitimate reason for the alleged discrimination. *Id.* If LaSalle Bank meets this production burden, Jagla may then rebut that evidence by showing the proffered reasons are a pretext for discrimination, or that impermissible motives tainted LaSalle Bank's decisions to reject his applications. *See id.* at 803-05. To survive a summary judgment motion, Jagla must present "evidence that calls into question the veracity of [LaSalle Bank's] explanation." *Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 601 (7th Cir. 2001); *see also Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004) ("[p]retext is more than a mistake on the part of the employer; it is a phony excuse"). His *pro se* status does not relieve him of the burden to establish a *prima facie* case of discrimination and to present evidence giving rise to an issue of material fact. *Carr v. United Airlines*, No. 03 C 8553, 2005 WL 1705830, at **3-5 (N.D. Ill. July 15, 2005) (Pallmeyer, J.).

LaSalle Bank argues Jagla fails to establish a *prima facie* case under either a disparate treatment or a disparate impact theory, and that there is no evidence giving rise to an issue of fact as to whether its proffered reasons are a pretext for discrimination. LaSalle Bank's arguments are discussed in turn.

7

## C.    *Prima Facie* Case

### (1)    Disparate Impact

To establish a *prima facie* case, Jagla must (1) isolate and identify specific employment practices that are allegedly responsible for any observed statistical disparities; and (2) present sufficient statistical evidence to show the practices in question have excluded job applicants because of their membership in a protected group. *Farrell v. Butler Univ.*, 421 F.3d 609, 616 (7th Cir. 2005).

Jagla fails to establish either element of a *prima facie* disparate impact claim. Jagla alleges two discriminatory hiring practices: (1) LaSalle Bank hires only graduates from a group of unidentified "preferred" colleges, and refuses to hire graduates from other colleges, presumably including his *alma mater*; and (2) LaSalle Bank favored on-campus recruits over online applicants. Pl. Resp. Mem. at 5. According to Jagla, these practices result in discrimination against applicants of foreign origin or over the age of 40 years. But nothing in the record supports his conclusory allegations. To the contrary, the record shows LaSalle Bank hired at least one online applicant in 2004,[1] and that the credit analysts came from over 20 colleges – private and public, small and large, and with regional and national reputations. *See* Def. Facts at ¶ 62; Def. Reply Ex. A at ¶ 1 (Zemach Supplemental Decl.). The record also shows LaSalle Bank chooses to recruit in colleges located near its regional offices, or are consistent in producing talented candidates. *Id.* Ex. B at ¶¶ 35, 58 (Zemach's answers to written deposition). Viewing the record in the light most favorable to Jagla,

---

[1] Without any factual basis, Jagla argues LaSalle Bank's "hiring practices [of disfavoring online applicants are] not supported by . . . business necessity." Pl. Resp. Mem. at 5. But the efficacy of LaSalle Bank's hiring practices is relevant only if they cause disparate impact. *See Allen v. City of Chicago*, 351 F.3d 306, 312 (7th Cir. 2003) (subjecting employment practices to review only after finding they have a disparate impact). Absent any evidence of disparate impact, Jagla's "business necessity" argument is irrelevant.

no inference of discrimination can be drawn from LaSalle Bank's decisions to conduct on-campus interviews.

Even assuming LaSalle Bank gives preferential treatment to a group of "preferred" colleges, Jagla must submit evidence of statistical disparity demonstrating LaSalle Bank's purported practice has a discriminatory impact on applicants who are either of foreign origin or over the age of 40. *Morgan v. Harris Trust & Sav. Bank of Chicago*, 867 F.2d 1023, 1027 (7th Cir. 1989). He submits three convoluted and conclusory affidavits asserting LaSalle Bank discriminated against employees and candidates who are "Title VII members" or over 40 years old.[2] Pl. Facts Exs. 13, 17, 21. As discussed in Section II(C) below, these affidavits are stricken for lack of foundation. But even if considered, Jagla's multiple affidavits fail to establish a *prima facie* case because they lack support in the record. For example, in Exhibit 17, Jagla vouches that his "statistics" were "[f]ully supported by the hiring records." *Id.* Ex. 17. But a careful review of his voluminous submission reveals no basis for his purported statistical evidence. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) (the court "is not required to 'wade through improper denials and legal argument in search of a genuinely disputed fact'") (quoting *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)). Absent any factual basis for LaSalle Bank's purported discriminatory practices, Jagla's claims cannot survive a summary judgment motion by relying on conclusory affidavits. *Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003) ("a non-movant must allege *specific* facts creating a genuine issue for trial and may not rely on vague, conclusory allegations") (emphasis original).

---

[2] In his brief, Jagla also argues, without any factual basis, that LaSalle Bank discriminated against online applicants because it spent $1 million on on-campus recruiting. Pl. Resp. Mem. at 4. Absent a linkage between LaSalle Bank's budget and Jagla's claims, his argument is baseless.

### (2)    Disparate Treatment

To establish a *prima facie* case under a disparate treatment theory, Jagla must demonstrate: (1) he belongs to a protected group; (2) he applied for and was qualified for the positions; (3) he was rejected for the positions; and (4) LaSalle Bank hired persons outside the protected class. *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 454 (7th Cir. 1999); *see also Brummett v. Sinclair Broad. Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005) (listing the *prima facie* elements for disparate treatment case).

Jagla fails to proffer any evidence to meet his burden to establish the second prong – that he was qualified for the credit analyst or the finance associate positions. While his academic record meets LaSalle Bank's minimum requirements, he must also pass the second step: a subjective analysis to become a qualified applicant. The undisputed evidence reflects he was found unsuitable for the credit analyst position because he was pursuing graduate studies in financial markets – unrelated to the credit analyst position, and because his resume showed no history of residency or work in areas where LaSalle Bank's regional offices were located. Zemach Decl. at ¶ 21. Aside from Jagla's speculative statements, there is no evidence supporting his assertion that he was the best qualified candidate for the finance associate position. In fact, the record does not even identify the subjective requirements for finance associates.

Arguing the contrary, Jagla relies on *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). But his reliance on *Burdine* is misplaced: *Burdine* requires establishment of a *prima facie* discrimination claim. *Id.* at 252-53. To carry this burden, he must come forth with evidence, rather than bare bones citation of legal authority. Absent any evidence giving rise to a reasonable inference of discrimination, summary judgment in LaSalle Bank's favor is appropriate.

10

**D.     Pretext**

Even assuming Jagla sufficiently establishes a *prima facie* discrimination claim, LaSalle

Bank has met its burden under *McDonnell Douglas* to offer non-discriminatory reasons for rejecting

his applications. According to LaSalle Bank, Jagla's resume revealed neither his Polish origin nor

his age. He was found unsuitable for the credit analyst position because his graduate studies in

financial markets lacked relevance to the position, and because his resume showed no connections

to areas where LaSalle Bank's regional offices were located. Zemach Decl. at ¶ 21. In addition, his

application for the finance associate position, submitted on February 18, 2005, was rejected because

LaSalle Bank had chosen all potential candidates two days earlier. *Id.* at ¶¶ 12-13.

Under *McDonnell Douglas*, Jagla's claims may survive a summary judgment motion only

if he raises a genuine issue of material fact as to whether LaSalle Bank's explanations were a mere

pretext for discrimination. He may establish pretext by proving one of the following: "(1) the

proffered reasons are factually baseless; (2) the proffered reasons were not the actual motivation for

[LaSalle Bank's rejection]; or (3) the proffered reasons were insufficient to motivate [the rejection]."

*Wolf v. Buss (Am.) Inc.*, 77 F.3d 914, 919 (7th Cir. 1996). But as discussed below, he fails to submit

any evidence to establish pretext.

**(1)     Credit Analyst**

Jagla argues Zemach's explanations for rejecting his application lacked veracity. In his 2005

statement to the EEOC, Zemach attested only that Jagla was unsuitable for the credit analyst position

because he pursued a graduate degree in financial markets. Pl. Facts Ex. 6 at ¶ 21 (Zemach Aff.).

In support of the summary judgment motion, Zemach states an additional reason for his decision to

reject Jagla's application: he lacked connections to the areas where LaSalle Bank's regional offices were located. Zemach Decl. at ¶ 21. Jagla argues Zemach has changed his story, giving rise to an inference of dishonesty. Contrary to Jagla's argument, Zemach is free to provide additional explanations for his decision. *Pagsuberon v. Chicago Tribune Co.*, 155 F. Supp. 2d 959, 965 (N.D. Ill. 2001) (Bucklo, J.) (citing cases). The two reasons offered by Zemach are not conflicting and do not raise an issue of material fact as to whether they are a mere pretext.[3] *See Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 684 (7th Cir. 2000) ("'pretext' means deceit used to cover one's tracks").

Jagla alleges LaSalle Bank hired applicants who lacked connections to their assigned regions. But he fails to submit any evidence to support the allegations. He characterizes LaSalle Bank's recruiting as "tainted," and accuses Zemach of exercising "[e]xcessive subjectivity" in selecting candidates for interviews. Pl. Resp. Mem. at 3-4. Not only do these conclusory allegations lack any factual basis, but even if true, they do not give rise to an inference that Zemach's stated reasons were pretextual. *See Baron v. City of Highland Park*, 195 F.3d 333, 341 (7th Cir. 1999) ("the overall correctness or desirability of the reasons proffered is not relevant"). Absent evidence demonstrating pretext, Jagla's arguments must fail. *See Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1007 (7th Cir. 2001) (plaintiff "must present facts that cast doubt on the [employer's] specific *reasons* for her termination") (emphasis original).

---

[3] Jagla also argues Zemach lied in his declaration because the total number of online applications he provided was different from the one in his EEOC affidavit. This argument lacks merit. Zemach's numbers were clearly estimates. *See* Pl. Resp. Fact at ¶ 23, Ex. 6.

12

### (2)    Finance Associate

Jagla submits an affidavit listing eleven individuals purporting to be LaSalle Bank's newly-hired finance associates, their grade point averages, ages, and Title VII status. Pl. Facts Ex. 4; *see also id.* Ex. 3 (Ann Kurowska's application).[4] Jagla argues his grade point average – a perfect 4.0 – made him a superior candidate, and that LaSalle Bank's choice of younger candidates supports an inference of discrimination on the basis of his age. But Jagla fails to show that grade point average is the decisive qualifying factor for the finance associate position. Even assuming grade point average is decisive and LaSalle Bank rejected Jagla's application in error, Jagla's affidavits do not constitute evidence of pretext. *Essex v. United Parcel Serv., Inc.,* 111 F.3d 1304, 1310 (7th Cir. 1997) ("[t]he fact that the employer was mistaken or based its decision on bad policy, or even just plain stupidity, goes nowhere as evidence that the proffered explanation is pretextual").

Jagla argues Zemach lied that he and his staff completed the selection of potential candidates by February 16, 2005, two days before receiving Jagla's online application. In support, he submits that LaSalle Bank interviewed a candidate, James Day, in May 2005, and offered him a finance associate position thereafter. *See* Pl. Facts Ex. 18 (documents concerning James Day's application). But the undisputed record reflects that Day, a minority candidate and a Stanford University graduate, was recommended to Zemach by a LaSalle Bank employee. Def. Reply Ex. A at ¶ 10 (Zemach Supplemental Decl.). The fact that Zemach considered Day's application in May 2005 does not cast doubt on Zemach's statement that he and his staff stopped reviewing online applications after February 16, 2005. This cut-off date may be arbitrary, but no discriminatory motive can be drawn

---

[4] LaSalle Bank hired Anna Kurowska in November 2004. Pl. Facts Ex. 3. Her resume indicates she is fluent in Polish and pursued an internship with the Polish Observer in the European Parliament. *Id.*

from Zemach's decision to consider Day's application based on another bank employee's recommendation. *See Senner v. Northcentral Tech. Coll.*, 113 F.3d 750, 756 (7th Cir. 1997) (employer's arbitrary decision to interview only three of the nine qualified candidates does not constitute evidence of pretext). Construing the facts in the light most favorable to Jagla, no reasonable juror could find that Zemach lied about the cut-off date because he considered a minority candidate who graduated from a prestigious university and was recommended by a bank employee. *See id.* (no "jury could imply a sinister motive for short-listing only the three candidates with the highest numerical rating"). Accordingly, Jagla fails to raise an issue of material fact with regard to LaSalle Bank's legitimate reason for rejecting his application.

## II. Motion to Strike and to Amend

LaSalle Bank moves to strike and deem admitted portions of Jagla's Local Rule 56.1(b)(3)(B) response and to strike certain exhibits. In addition, LaSalle Bank moves to strike the "anecdote" on page three of Jagla's opposition brief, in which he alleges LaSalle Bank hired drug addicts and alcoholics from Northwestern University. Finally, LaSalle Bank moves to amend the list of colleges identified in paragraph 62 of its Local Rule 56.1(a)(3) statement. Jagla has not responded to LaSalle Bank's motion with respect to amending the list of colleges and to striking the scandalous, unsupported anecdote in his brief; as a result, LaSalle Bank's motion is granted in these respects. LaSalle Bank's motion to strike Jagla's Local Rule 56.1(b) response and exhibits is addressed below.

### A. Legal Standard

Affidavits submitted in opposition to summary judgment must (1) be made on personal knowledge; (2) set forth facts in admissible form; and (3) show the affiants are competent to testify to the matters stated therein. Fed. R. Civ. P. 56(e); *Palmer v. Marion County*, 327 F.3d 588, 595 (7th

Cir. 2003). Rule 56 affidavits must present concrete facts; mere conjecture or speculation is insufficient. *Johal v. Little Lady Foods, Inc.*, 434 F.3d 943, 947 (7th Cir. 2006). Consistent with Rule 56, Local Rule 56.1 requires a party opposing summary judgment to file a concise response to the movant's statement of facts, and in case of any disagreement, to refer to affidavits or the record. LR 56.1(b)(3)(B). Legal arguments are "not a recitation of a 'fact' to which an affiant is competent to testify" and therefore do not belong in a Local Rule 56.1(b)(3)(B) response. *Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985); *see also Salamanca v. Robert Half Corp.*, No. 02 C 5033, 2003 WL 1825561, at *2 (N.D. Ill. Apr. 4, 2003) (Conlon, J.) (striking legal argument in Local Rule 56.1 statement). Nor may a response contain additional facts beyond the movant's statement, because they must be submitted separately. *See* LR 56.1(b)(3)(C); *see also Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 810 (7th Cir. 2005) (a district court may refuse to consider additional facts submitted in a Local Rule 56.1(b)(3)(B) response). A response may be stricken for failure to comply with these rules. *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 987 (7th Cir. 2001) (a district court has discretion to enforce these rules "strictly or somewhat leniently").

Jagla is *pro se* and therefore enjoys the benefit of the doubt on procedural matters. *See, e.g., Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001) (*pro se* pleadings are liberally construed). Leniency toward a *pro se* litigant, however, is circumscribed. *See id.* (courts are not "obliged . . . to scour the record looking for factual disputes" to rescue a *pro se* litigant from losing summary judgment). Jagla's *pro se* status does not serve as a license to ignore the Federal Rules of Civil Procedure or the Local Rules. *See Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) ("[procedural] rules apply to uncounseled litigants"); *Downs v. Westphal*, 78 F.3d 1252, 1257 (7th Cir. 1996) ("*pro se* litigants are not entitled to a general dispensation from the rules of procedure").

Moreover, in accordance with Local Rule 56.2, he was served with a notice to a *pro se* litigant setting forth in detail Local Rule 56.1's requirements. *See* Def. Mot. Ex. B, Dkt. No. 71 (July 11, 2006). Thus, he is expected to comply with Local Rule 56.1; his response to LaSalle Bank's motion, as well as his supporting exhibits, may be stricken for incompliance. *E.g.*, *Wiggen v. Leggett & Platt, Inc.*, No. 03 C 1986, 2004 WL 2515823, at \*3 (N.D. Ill. Nov. 5, 2004) (Leinenweber, J.).

## B.    Jagla's Local Rule 56.1(b)(3)(B) Response

LaSalle Bank moves to strike 37 paragraphs of Jagla's Local Rule 56.1(b)(3)(B) response because they (1) contain legal arguments or additional facts; (2) fail to respond to LaSalle Bank's Local Rule 56.1(a)(3) statement; or (3) lack support in the record. LaSalle Bank's arguments are persuasive. As discussed below, the paragraphs in question must be stricken.[5]

- **Paragraph 9:** LaSalle Bank describes its two-step process in reviewing online applications generally. Jagla's response is defective because he fails to admit or deny LaSalle Bank's statement. He submits additional purported facts about the review of his applications, and argues Zemach's proffered reasons for rejecting his applications are a mere pretext.

- **Paragraph 10:** LaSalle Bank states Zemach personally reviewed Jagla's application for the credit analyst position. Jagla's response is defective because it is argumentative, and contains additional allegations about a purported cover-up.

- **Paragraphs 12, 13, 14, and 15:** LaSalle Bank describes its college recruitment policies and procedures. Jagla's responses are defective. He fails to admit or deny LaSalle Bank's statements. Rather, he submits additional facts about alleged disparate treatment, and argues LaSalle Bank discriminates against online applicants. His responses lack support in the record. In addition, his response to paragraph 14 contains allegations of his dismissed failure to promote claims. *Jagla*, 2006 WL 695251, at \*\*2-3.

---

[5] For the sake of brevity, the court does not restate each paragraph of LaSalle Bank's Local Rule 56.1(a)(3) statement (Dkt. No. 72 (July 12, 2006)) and Jagla's Local Rule 56.1(b)(3)(B) response (Dkt. No. 88 (Aug. 22, 2006)).

- **Paragraphs 16, 19, and 20:** LaSalle Bank sets forth the minimum requirements for the credit analyst and the finance associate positions. Jagla's responses are defective because he fails to admit or deny LaSalle Bank's statements. In addition, he submits additional puported facts about other candidates' qualifications, and argues LaSalle Bank hired underqualified candidates.

- **Paragraph 17:** LaSalle Bank identifies the locations of its regional offices. Jagla's response is defective because it is argumentative, and fails to admit or deny LaSalle Bank's statement.

- **Paragraph 21:** LaSalle Bank describes its procedure in reviewing online applications. Jagla's response is defective because he fails to admit or deny LaSalle Bank's statement. In addition, he argues LaSalle Bank hired underqualified candidates.

- **Paragraph 25:** LaSalle Bank states Jagla's application for the finance associate position was among approximately 384 online applications. His response is defective because he fails to admit or deny LaSalle Bank's statement. In addition, he argues, without any factual support, that the number of application was low, and that LaSalle Bank should be able to review all applications.

- **Paragraph 26, 27, 28, 29, 30, and 31:** LaSalle Bank sets forth the content of Jagla's resume. His responses are defective because he fails to admit or deny LaSalle Bank's statements. He also submits additional facts about LaSalle Bank's purported hiring practices, and argues that LaSalle Bank knew about his age and his national origin. His responses lack any support in the record.

- **Paragraph 32, 34, and 35:** LaSalle Bank explains its review of Jagla's application for the credit analyst position. His responses are argumentative and non-responsive. In addition, his responses to paragraphs 32 and 35 contain additional purported facts about the finance associate position. He fails to cite to the record to support his argument that LaSalle Bank hired credit analysts who lacked connections to their assigned regions.

- **Paragraph 36, 37, and 56:** LaSalle Bank sets forth reasons for rejecting Jagla's application for the finance associate position. His responses are argumentative and unsupported by the record. For instance, he argues, without any factual support, that LaSalle Bank hired a "highly unqualified" candidate, and failed to hire any online applicants. His responses also contain

additional purported facts about other candidates and LaSalle Bank's hiring practice.

- **Paragraphs 38, 39, 40, 41, and 42:** LaSalle Bank sets forth Jagla's national origin discrimination claim. His responses are defective because he fails to admit or deny LaSalle Bank's statements. His responses also contain legal arguments. His response to paragraph 38 contains additional purported facts about another candidate. In response to paragraphs 38 and 39, he argues, without any factual support, that he was better qualified than other candidates, and that LaSalle Bank prefers to recruit in colleges that have a small population of graduates of a foreign origin or over 40 years old.

- **Paragraph 43:** LaSalle Banks states Jagla is unaware of another individual who is over 40 years old, and whose employment application to LaSalle was rejected. Jagla's response, alleging age discrimination, is argumentative and non-responsive. His response also fails to cite to the record for support.

- **Paragraph 44:** LaSalle Bank states Jagla testified about his lack of knowledge in its recruiting activities. His response, asserting he possesses documentary evidence, lacks support in the record.

- **Paragraph 51:** LaSalle Bank describes the content of an exhibit used in Jagla's deposition. His response is defective because he fails to admit or deny LaSalle Bank's statement. In addition, he argues, without any factual support, that LaSalle Bank's recruiting methods are discriminatory.

- **Paragraphs 53, 54, and 55:** LaSalle Banks states Jagla has no evidence of disparate impact. His responses are defective because he argues, without any support from the record, that LaSalle Bank discriminated against certain colleges.

- **Paragraph 61:** LaSalle Bank lists the colleges where it recruits credit analysts. Jagla's response is defective because he fails to admit or deny LaSalle Bank's statement, and because he refers to additional purported facts about the finance associate position.

- **Paragraph 63:** LaSalle Bank states it hired a candidate who had a Polish background. Jagla's response is defective because he fails to admit or deny LaSalle Bank's statement. In addition, he argues, without factual support, that his qualifications were superior.

As specified above, the foregoing paragraphs of Jagla's prolix Local Rule 56.1(b)(3)(B) response are defective and must therefore be stricken. *Wiggen*, 2004 WL 2515823, at *3 (striking self-serving legal conclusions from *pro se* plaintiff's response to motion for summary judgment). As a result, the corresponding paragraphs of LaSalle Bank's Local Rule 56.1(a)(3) statement are deemed admitted. LR 56.1(b)(3)(C).

## C.     Jagla's Exhibits

LaSalle Bank moves to strike eight exhibits Jagla submits under Local Rule 56.1(b)(1). LaSalle Bank argues Exhibit 1 should be stricken because it refers to claims that were previously dismissed. Exhibit 1 is an affidavit signed by Jagla accusing LaSalle Bank of denying him employment and training opportunities in the 1990s. His claims arising from his employment with LaSalle Bank between 1996 and 2000 were dismissed with prejudice. *Jagla*, 2006 WL 695251, at **2-3. As a result, the statements pertaining to events occurring in the 1990s have no bearing on this case. Jagla states that LaSalle Bank discriminated against him in 2005 when he applied for jobs online. But this statement is a legal argument and should be disregarded. *Pfeil*, 757 F.2d at 862. Because Exhibit 1 contains irrelevant statements and legal arguments, LaSalle Bank's motion to strike this exhibit is granted.

LaSalle Bank moves to strike Jagla's Exhibits 5, 13, 17, 21, and 22 because they are incomprehensible and argumentative, and because they lack foundation. Each of these two-page exhibits are signed by Jagla as an affidavit; each contains a table purporting to show the differences between members and non-members of Title VII protected groups, in terms of their qualifications and of LaSalle Bank's treatment. Jagla does not state in any of these exhibits that he had personal

knowledge of the information. *See* Pl. Facts Exs. 5, 13, 17, 21, 22. Nor does he identify the source or bases of these documents. For example, in Exhibit 5, he attests that a "critical" duty of a credit analyst is sales, yet he does not state the basis of his knowledge. Pl. Facts Ex. 5; *see also id.* Ex. 13 (speculating about the compensation and training patterns of LaSalle Bank employees); *id.* Ex. 17 ("LaSalle Bank's career statistics"); *id.* Ex. 21 (LaSalle Bank's "hiring statistics for 2005"); *id.* Ex. 22 (candidates "who were not even qualified . . . but were mysteriously hired"). As a result, he fails to lay a proper foundation for these exhibits. Accordingly, these exhibits must be stricken. *Torry v. Northrop Grumman Corp.*, No. 98 C 7288, 2003 WL 22595280, at *7 (N.D. Ill. Nov. 7, 2003) (Norgle, J.) (striking affidavits because they "provide no foundation"); *see also* Fed. R. Civ. P. 56(e) (requiring personal knowledge); Fed. R. Evid. 602 (same).

Finally, LaSalle Bank moves to strike Jagla's Exhibits 3 and 4, arguing they are inadmissible under Fed. R. Evid. 701 because they are not based on Jagla's perceptions. Both exhibits are signed by Jagla as affidavits. In Exhibit 3, Jagla juxtaposes his grade point average, accounting course work, and employment experience with those of Ann Kurowska (another applicant), and submits Kurowska's resume and college transcripts to support his statements. Pl. Facts Ex. 3. In Exhibit 4, Jagla lists the grade point averages, ages, and membership in Title VII protected groups of himself and eleven other applicants, and states that the information is derived from discovery materials. *Id.* Ex. 4. Because these two exhibits contain only straightforward information Jagla can extract from discovery materials, they are not inadmissible under Fed. R. Evid. 701. Accordingly, LaSalle Bank's motion to strike these two exhibits must be denied.

### III. Motion to Compel Document Production

When discovery closed on July 11, 2006, Jagla moved to compel discovery. First Mot. to Compel, Dkt. No. 68 (July 11, 2006). His motion was granted in part and denied in part. Minute Order, Dkt. No. 81 (Aug. 1, 2006). He now files a second motion to compel, alleging LaSalle Bank concealed documents during discovery. Second Mot. to Compel, Dkt. No. 93 (Aug. 29, 2006). His motion is procedurally defective because it fails to include a Local Rule 37.2 statement of effort to reach an accord. For this reason alone, his motion should be denied. *Dugan v. Briley*, No. 03 C 4366, 2004 WL 783200, at *3 (N.D. Ill. Jan. 12, 2004) (Deryeghiayan, J.) (enforcing Local Rule 37.2 against a *pro se* litigant).

Even if properly filed, Jagla's motion is substantively defective because he fails to show good cause. Fed. R. Civ. P. 26(b)(1) ("[f]or good cause, the court may order discovery"). He accuses LaSalle Bank of concealing documents that would show its proffered reasons for rejecting his applications are a pretext. But his accusations are speculative and contradicted by the record. He argues LaSalle Bank concealed information regarding several candidates' ages. But the record shows LaSalle Bank did not have these candidates' birth date information because they were never hired, and because the information was missing in their applications. *See* Def. Resp. to Second Mot. to Compel Ex. F at 3. Similarly, the record refutes Jagla's baseless allegation that LaSalle Bank withheld portions of its interview schedules. *See id.* Exs. B-D; *see also* Def. Reply Ex. A at ¶ 8 (Zemach Supplemental Decl.). Jagla questions the veracity of LaSalle Bank employees' written depositions on the basis that the employees were aided by counsel. His argument lacks any legal basis because a deponent is entitled to counsel, regardless of whether the deposition is taken on oral or written questions. *Hamdi & Ibrahim Mango Co. v. Fire Ass'n of Philadelphia*, 20 F.R.D. 181, 184 (S.D.N.Y. 1957) (Bryan, J.).

In addition, Jagla speculates that LaSalle Bank possesses documents damaging to its defense. He alleges that (1) Zemach's February 16, 2005 cut-off date was fictitious; (2) Zemach made inconsistent statements regarding who reviewed online applications; (3) Zemach improperly relaxed the minimum requirements for certain candidates; and (4) LaSalle Bank hired credit analysts who lacked connections to their assigned regions. These allegations are a mere rehash of Jagla's arguments opposing summary judgment. Jagla's attempt to embark upon a fishing expedition must be rejected. *See United States v. Bob Stofer Oldsmobile-Cadillac, Inc.*, 766 F.2d 1147, 1153 (7th Cir. 1985) (denying additional discovery where party has made only "vague assertions" that further discovery would develop genuine issues of material fact).

## IV.    Motion to Extend Discovery

Like his motion to compel, Jagla's motion to extend discovery is procedurally defective. Under Fed. R. Civ. P. 56(f), he is required to submit an affidavit stating why he is entitled to additional discovery. Fed. R. Civ. P. 56(f). Because he fails to comply with this rule, his motion must be denied. *First Nat. Bank & Trust Corp. v. Am. Eurocopter Corp.*, 378 F.3d 682, 694 (7th Cir. 2004).

Jagla complains he lacked time to conduct discovery. But this is a result of his own fault: he spent an inordinate amount of time filing duplicative motions for appointment of counsel, for class certification, for leave to appeal, and for reconsideration. *See, e.g.*, Dkt. Nos. 10, 20-21, 25, 28, 33, 82. Because he fails to show good cause for additional discovery, his motion must be denied. *United States v. 1948 South Martin Luther King Drive*, 270 F.3d 1102, 1113 (7th Cir. 2001) (denying a discovery motion filed after discovery cut-off for failure to show good cause).

22

## CONCLUSION

For the reasons set forth above, LaSalle Bank's motion for summary judgment is granted, its motion to strike and to amend is granted in part and denied in part, and Jagla's motions to compel document production and to extend discovery are denied.

ENTER:

Suzanne B. Conlon
United States District Judge

September 26, 2006